**Diegane Dione**
Diegane Dione
196 Utica Ave
Unit #2167
Brooklyn, NY 11213
Tel: (347)486-4053
Email: diegane.dione@gmail.com

*Plaintiff in Pro Per*
Diegane Dione

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DIEGANE DIONE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BLUHAPTICS, INC. DBA OLIS ROBOTICS, a Delaware corporation<br><br>Defendant. | Case No.  2:26-CV-02170 -RAJ<br><br>**COMPLAINT FOR:**<br><br>1.  **FRAUDULENT INDUCEMENT**<br>2.  **FRAUDULENT MISREPRESENTATION**<br>3.  **FAILURE TO DISCLOSE (DEL. CODE ANN. TIT. 6, § 2513)**<br>4.  **BREACH OF FIDUCIARY DUTY OF LOYALTY**<br>5.  **BREACH OF FIDUCIARY DUTY OF CARE**<br>6.  **GROSS MISMANAGEMENT**<br>7.  **ABUSE OF CONTROL**<br>8.  **CORPORATE WASTE**<br>9.  **FAILURE TO DISCLOSE MATERIAL INFORMATION**<br>10. **NEGLIGENT MISREPRESENTATION**<br>11. **VIOLATION OF 17 CFR §240.10B-5**<br>12. **DISGORGEMENT**<br>13. **AN ACCOUNTING**<br><br>**JURY TRIAL DEMANDED** |

///

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

## COMPLAINT

Plaintiff DIEGANE DIONE ("Dione" or "Plaintiff") hereby files this Complaint against Defendant BLUHAPTICS, INC. DBA OLIS ROBOTICS, a Delaware corporation ("Olis" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.      Plaintiff DIEGANE DIONE ("Dione" or "Plaintiff") is an individual residing in the State of New York, City of Brooklyn.

2.      Plaintiff is an inventor and angel investor with experience investing in various sectors, including B2C & B2B eCommerce, logistics & supply chain, advertising, data services, AI, biotech, sustainability, and CPG. He has over 20 years of experience as a digital transformation and innovation expert across multiple industries, including the Internet of Things, mobile, robotics, fintech, AI, and blockchain.

3.      Defendant BLUHAPTICS, INC. DBA OLIS ROBOTICS, a Delaware corporation ("Olis" or "Defendant") is a corporation organized and existing under the laws of State of Delaware with a principal place of business in the State of Washington. Defendant Olis specializes in video-based diagnostics for robotic systems.

## THE PARTIES, JURISDICTION, VENUE. AND CHOICE OF LAW

4.      Plaintiff Diegane Dione is, and at all times mentioned was, an individual residing in the State of New York.

5.      Defendant Olis is, and at all times mentioned was, an entity organized under the laws of the State of Delaware with its principal place of business in the State of Washington.

6.       Venue is proper in this Court because the transaction giving Defendant standing in this Action contains a choice of forum provision that requires this Action be brought in the Western District of Washington.

7.      The choice of law governing this Complaint is that of the State of Delaware.

## TOLLING OF STATUTE OF LIMITATIONS

8.      In anticipation of Defendant's anticipated affirmative defenses, any applicable statute(s) of limitations were tolled by Defendant's knowing, deliberate, and active concealment of

— 2 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

the facts alleged herein, and fraudulent acts and omissions that gave rise to the underlying Action. Defendant's conduct is inherently self-concealing because Plaintiff alleges and has substantial basis to believe that Defendant did not accurately disclose the details or circumstances of the company's financial health when Plaintiff entered into the first related transaction or became an intended beneficiary of the second related transaction. Defendant misled, misrepresented, and concealed material facts that were critical to Plaintiff's decision to invest in the entity.

9.      In addition, even after Plaintiff raised concerns to Defendant concerning the recapitalization, Defendant only told Plaintiff that a majority of noteholders consented to the plan. Defendant failed to disclose the true financial health of the company, the actions and omissions that led to the recapitalization, and failed to disclose why the company has not disclosed annual financials for several years. Defendant deliberately and methodically concealed material facts that would have influenced Plaintiff's decision to first invest in the company and very likely did influence those who did consent to the recapitalization plan, which in effect, was nothing more than a calculated attempt to defraud investors and allow Defendant to evade responsibility for poor financial management and corporate waste.

10.      Defendant was and remains under a continuing duty to disclose to Plaintiff the true nature of the company's financial health, the reasons why the Chief Executive Officer left shortly after Plaintiff signed the first convertible note and why the replacement Chief Executive Officer was removed as a result of the recapitalization plan, the actions and omissions of both executives that were ratified and accepted by the Board of Directors, and the ongoing financial issues that plague the company, which continues to conceal financials that would apprise investors of material information.

11.      Plaintiff further alleges on information and good faith belief that Defendant has concealed and continues to conceal information on sales information, product development, and partnerships, all of which constitute material information. Defendant has continued to fail to provide Plaintiff and other investors material information relevant to the financial health of Olis Inc.

12.      Plaintiff further contends that all actions and omissions mentioned or alleged herein are part of a recurring and ongoing scheme to defraud and mislead investors.

— 3 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

13. As a result of Defendant's concealment and intentional omissions, any and all statutes of limitations otherwise applicable to the allegations herein were tolled.

**GENERAL ALLEGATIONS**

14. In mid-2021, Plaintiff engaged in discussions with Defendant on an investment in the start-up and executed a Convertible Note (the "First Note") for $20,000 and later, Defendant executed the second Convertible Note (the "Second Note") for $30,000 (both "the Notes").

15. At the time that Plaintiff executed the First Note, Defendant failed to disclose to Plaintiff that the company's Chief Executive Officer ("CEO") Donald Pickering would soon be leaving his position, and a new CEO would be taking his place.

16. Pickering left his position as CEO in July 2021.

17. From December 15, 2017 to September 29, 2022, Pickering executed several Convertible Notes in the amount of $1,571,153.42.

18. Before Pickering left his position as CEO, he executed six (6) Convertible Notes, investing in Defendant.

19. After Pickering left his position as CEO, he only executed two (2) Convertible Notes, one on November 10, 2021 for $400,000 and another on September 29, 2022 for $25,000.

20. Pickering was replaced by Frederik Ryden.

21. While Pickering left his position as CEO, he maintained his seat on the Board of Directors.

22. Ryden was also a Board member at the time he became CEO, establishing a direct and apparent conflict of interest that supersedes.

23. At the time that Ryden became CEO as a Board member, his fully diluted ownership (excluding Convertibles) was 16.2474% at 2.9 million Common Shares.

24. Ryden lacked both business acumen and experience. At the time that Plaintiff executed the First Note, the intended change of leadership was not disclosed to him.

25. Plaintiff alleges on information and good faith belief that the Board of Directors of Defendant knew that CEO Pickering was intending to soon leave his position with Ryden replacing

— 4 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

him; however, Defendant intentionally and deliberately concealed this material information from Plaintiff.

26.     Securities and Exchange Commission Rule 10b-5 and applicable regulation 17 CFR § 240.10b-5 states that, "states that "it shall be unlawful for any person . . . (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact . . . or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

27.     However, not only did Defendant fail to disclose that there was an imminent change in core leadership, but Defendant also demonstrated gross and reckless negligence in allowing Ryden to replace Pickering as CEO.

28.     Ryden did not possess the necessary or even desired qualifications to serve as CEO. He did not have a business background nor did he have proper training to manage the daily responsibilities and obligations as CEO, develop sound business development, sales, and marketing strategy, or make important decisions in the best financial interest of the company.

29.     Following the leadership transition, Ryden made a series of poor business decisions that were accepted and ratified by Defendant's Board of Directors. These decisions were detrimental to the company's financial health, business relationships, and goodwill, leading Defendant into the zone of insolvency by mid-2023.

30.     In 2023, due to the financial distress caused by the Ryden's decisions, Defendant proposed a recapitalization plan (the "Plan") that would require Convertible Noteholders to forfeit the discount on their executed Convertible Notes and the accrued interest on those Notes.

31.     At the time that Defendant proposed this Plan, Defendant had four Board members: (1) Howard Chizeck; (2) Frederik Ryden; (3) Donald Pickering; and (4) Susan Preston.

32.     Howard Chizeck was Chair of the Board of Directors and had been for years. At the time, his fully diluted ownership (excluding convertibles) was 12.7982% at 2.2 million Common Shares.

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

33. Howard Chizeck executed a Convertible Note on February 4, 2021 for $25,000.00. on April 28, 2022 for $25,000.00, and on September 27, 2022 for $25,000.00. The Plan's impact put him at 2.1032% fully diluted ownership.

34. Frederik Ryden, at the time of proposal of the Plan, had only executed one Simple Agreement for Future Equity ("SAFE") at $50,000. On this basis, Ryden was not affected by the forfeiture of accrued interest and dilution of the equity.

35. Defendant sent a Memorandum to investors and other stakeholders ("the Memo"), including Plaintiff, summarizing, very vaguely, that Defendant's Board of Directors ("Board") recommends a necessary capital restructuring because Defendant "is critically low on cash resources and has been unable to raise equity capital with the current capital structure, interested venture investors have repeatedly communicated the need for a cap table that more closely reflects the Company's current stage of the development, and strong and growing market demand exists for Olis Connect, the Company's industrial automation product

36. According to the Memo, the Board determined that the Company must effectuate a significant capital restructuring to have any reasonable hope of raising additional equity capital and continuing to operate.

37. Furthermore, while Convertible Noteholders were promised a discount and accrued interest on their Notes, the Company effectively annulled that promise in this Plan.

38. In the Memo, the Company stated that "The Company's capital structure must be reset to appeal to new investors, while allowing all existing stakeholders to retain an equity interest in the Company. In short, 65% of the new cap table will be for "go-forward" team members (employees and the new op3on pool), and 35% will be allocated to the existing investors and stakeholders. Of course, these holdings will be subject to dilution in subsequent rounds."

39. Under this Plan propounded by Defendant, Common Stockholders, including those that executed Convertible Notes, would forfeit their promised discount and accrued interest on the Note.

40. The Plan contained no financial information indicating the financial health of the company, just vague and broad language stating that the company was close to insolvency. No

— 6 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

financial history was included, insight on financial decisions, or accounting records that gave Noteholders greater perspective on the financial state of the company.

41.   A majority of Noteholders consented to the Plan and the company subsequently enacted the Plan.

42.   At no perspective during or after the enactment of the Plan did investors receive any financial information on the company.

43.   Investors, including Noteholders, have yet to receive any information on the financial health or status of the company, financial decisions, sales information, and material information on their investments.

44.   Investors, including Plaintiff, have been kept in the dark on the financial health of Defendant and have received absolutely no updates from company leadership.

45.   Plaintiff believes on information and good faith belief and thereon alleges that before the Plan, Defendant made numerous financial decisions that violated the business judgment rule, constituted breaches of fiduciary duty of loyalty and care, and poor leadership adjustments that led to Defendant being on the brink of insolvency.

46.   Plaintiff believes on information and good faith belief and thereon alleges that when Defendant proposed the Plan to investors, Defendant knew that Noteholders, including Plaintiff, would not experience a return on their investment after dilution of their equity and forfeiture of the interest.

47.   Plaintiff believes on information and good faith belief and thereon alleges that Defendant intentionally withheld pertinent financial information that would have been material to Noteholders' consent of the Plan, including Plaintiff's consent of the Plan. Plaintiff further alleges that Plaintiff would not have consented to the Plan had Plaintiff been privy to the company's true financial status and the poor decisions that had led to the Plan.

48.   Plaintiff believes on information and good faith belief and thereon alleges that since the Plan, Defendant has sought to conceal the true financial health of the Company, its accounting records, sales and business development progress, and all other information that would allow Plaintiff to make any informed decisions on his investment. Plaintiff further alleges that Defendant

— 7 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

has intentionally attempted to mislead Plaintiff and other investors to the benefit of company leadership and the company.

49.     Plaintiff further alleges that Defendant has defrauded investors by intentionally concealing Defendant's sales and business development progress, financial records, financial health, and other accounting information in order to keep Plaintiff and other investors in the dark.

50.     As a direct and proximate result of Defendant's failures, negligence, and carelessness as set forth above, Plaintiff was damaged in that Plaintiff suffered extreme financial damage due to Defendant's fraudulent actions and omissions. Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

## FIRST CLAIM FOR RELIEF

### Fraudulent Inducement

### *(Against Defendant)*

51.     Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

52.     At the time Defendant solicited Plaintiff's investment and at the time that Plaintiff made both investments, Defendant had a legal obligation and fiduciary duty to disclose material financial information and leadership information that would be material to Plaintiff's investment.

53.     At the time Defendant proposed the Plan and failed to disclose material financial information, Defendant had a legal obligation and fiduciary duty to disclose material financial information would affect whether investors, like Plaintiff, agreed to the Plan.

54.     By virtue of this special relationship, Defendant knew, or should have reasonably known, that its failure to competently perform its duties and responsibilities would result in foreseeable damage to Plaintiff, including among other damages, significant economic losses.

55.     At all times mentioned herein, Defendant, through its material omissions and misrepresentations, induced Plaintiff to first invest in the entity and then continue his relationship with the company.

— 8 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

56.    Defendant knew that its material omissions and misrepresentations would have altered Plaintiff's behavior.

57.    Defendant induced Plaintiff to his detriment.

58.    Plaintiff suffered financial damage as a result of this inducement.

59.    As a proximate result of the foregoing negligent acts and omissions of Defendant, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

## SECOND CLAIM FOR RELIEF

### Fraudulent Misrepresentation

*(Against Defendant)*

60.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

61.    Defendant made material misrepresentations and omissions of fact in its disclosures, or non-disclosures, both financial and leadership from the time that Plaintiff invested in the company until the present.

62.    Defendant's conduct was and continues to be fraudulent because it had and has the effect of deceiving investors, including Plaintiff, as to the true financial health of the company.

63.    Plaintiff considered financial health and sound business leadership to be important factors when investing in a company. Material financial information and leadership information is material to the average, reasonable investor.

64.    Plaintiff was actually misled and deceived and was induced by Defendant to invest in the company and continue the relationship. Had Defendant truthfully disclosed the material financial information, Plaintiff would have either not invested or objected to the Plan, or would have terminated his relationship sooner.

65.    As a direct and proximate result of the foregoing breaches of fiduciary duty of Defendant, Plaintiff has sustained and will continue to sustain general, special, consequential, and

— 9 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

66.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

### THIRD CLAIM FOR RELIEF

### Failure to Disclose (Del. Code Ann. Tit. 6, § 2513)

*(All Defendant)*

67.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

68.    Pursuant to Del. Code Ann. Tit. 6, § 2513, "[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice."

69.    At all relevant times mentioned herein, Defendant made misrepresentations, suppressed and concealed material facts, and omitted material information that directly impacted Plaintiff's decision to not only invest in Defendant but also continue his relationship with the company.

70.    Defendant made misrepresentations, suppressed and concealed material facts, and omitted material information relevant to Defendant's financial health during the Plan and every day afterwards.

71.    Defendant has continued to conceal material information regarding the company's financial health and accounting records.

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

72. At all relevant times mentioned herein, Defendant was and still is violating Del. Code Ann. Tit. 6, § 2513.

73. As a direct and proximate result of the foregoing, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

74. In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## FOURTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty of Loyalty

*(All Defendant)*

75. Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

76. At all relevant times, a fiduciary relationship existed between Plaintiff and Defendant. Defendant owed a fiduciary duty of loyalty to investors, including Plaintiff. Defendant had a duty to act in the best interests of its members, including Plaintiff, and to manage the common interests and affairs of the community with loyalty and good faith.

77. Defendant owed Plaintiff a duty of loyalty, which required Defendant to act in good faith and to avoid any conflicts of interest that could harm the interests of its investors.

78. Defendant breached its duty of loyalty by failing to be transparent and honest with investors regarding the financial health of the company and allowing Plaintiff's equity interest to be diluted and interest forfeited under the Plan.

79. As a direct and proximate result of the foregoing breaches of fiduciary duty of Defendant, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

80.     In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

**FIFTH CLAIM FOR RELIEF**

**Breach of Fiduciary Duty of Care**

*(Against Defendant)*

81.     Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

82.     At all relevant times, a fiduciary relationship existed between Plaintiff and Defendant. Defendant had a duty to act in the best interest of its investors, including Plaintiff, and to manage the common interests and affairs of the company's financial activity with care.

83.     This duty was imputed to Defendant's leadership.

84.     Defendant owed Plaintiff a duty of care, which required Defendant to act with reasonable skill, diligence, and good faith in managing the affairs of the company, including but not limited to financial management.

85.     Defendant breached this duty of care by failing to properly disclose material information, including changes in leadership and financial information.

86.     At all relevant times, a fiduciary relationship existed between Plaintiff and Defendant. Defendant owed a fiduciary duty of care to investors, including Plaintiff. Defendant had a duty to act in the best interests of its members, including Plaintiff, and to manage the common interests and affairs of the community with care.

87.     As a direct and proximate result of the foregoing breaches of fiduciary duty of Defendant, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which

— 12 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

88.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## SIXTH CLAIM FOR RELIEF

### Gross Mismanagement

#### (Against Defendant)

89.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

90.    By their actions alleged herein to the present, Defendant either directly or through aiding and abetting, abandoned and abdicated its responsibilities and fiduciary duties with regard to prudently managing the assets and business of Olis, including without limitation the recapitalization plan, in a manner consistent with applicable standards.

91.    As a direct and foreseeable result of Defendant's foregoing breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

92.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## SEVENTH CLAIM FOR RELIEF

### Abuse of Control

#### (Against Defendant)

— 13 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

93. Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

94. Defendant's misconduct alleged herein constituted an abuse of their ability to control and influence, for which they are legally responsible. In particular, Defendant abused its position of authority by causing or allowing the misrepresentation of material facts regarding its financial position and internal controls.

95. As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

96. In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## EIGHTH CLAIM FOR RELIEF

### Corporate Waste

*(Against Defendant)*

97. Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

98. As alleged in detail, Defendant had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of Defendant and the use and preservation of its property and assets, and the highest obligation of fair dealings.

99. The Defendant has a fiduciary duty to protect Defendant's assets from loss or waste.

100. Defendant wasted Olis' corporate assets. For example, Defendant diverted corporate assets for improper purposes, such as for personal use and expenses, instead of using those corporate assets for their intended purpose.

— 14 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

101.    As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

102.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## NINTH CLAIM FOR RELIEF

### Failure to Disclose Material Information

*(Against Defendant)*

103.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

104.    At all relevant times mentioned herein, Defendant had a fiduciary and contractual duty to disclose material information to investors.

105.    Not only was the change in leadership material information, but financial information as to the actual financial health of the company was material information that should have been disclosed prior to the execution of the recapitalization plan.

106.    Furthermore, Defendant's abject failure to disclose any financial information on the company since is a significant breach of its fiduciary and contractual duty to investors, including Plaintiff.

107.    As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

108.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## TENTH CLAIM FOR RELIEF

### Negligent Misrepresentation

*(Against Defendant)*

109.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

110.    Defendant had a duty to provide honest and accurate information to investors, including Plaintiff, so that investors could make informed decisions on the Plan and continued investment in the company.

111.    Defendant misrepresented material facts regarding the company's financial health to Plaintiff, as described herein.

112.    Plaintiff considered the financial health and information to be an important factor when investing in the company and agreeing to the Plan. The financial health information is material to the average, reasonable investor.

113.    Defendant knew or reasonably should have known, that the average, reasonable investor would be misled by Defendant's omissions, false statements, and deceptive materials.

114.    Plaintiff justifiably relied on Defendant's misrepresentations and omissions and were actually misled and deceived, and were induced by Defendant to invest in the company and agree to the Plan. Had Defendant truthfully disclosed the company's financial heath, Plaintiff would not have invested, not have agreed to the Plan, and would not have continued his relationship with the company.

115.    As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which

— 16 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

116.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

**ELEVENTH CLAIM FOR RELIEF**

**Violation of 17 C.F.R. §240.10B-5**

*(Against Defendant)*

117.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

118.    Defendant, by engaging in the conduct described in the foregoing paragraphs, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

119.    By reason of the foregoing, Defendant violated, and unless enjoined, will continue to violate Section 10(b) of the Exchange Act and 17 C.F.R. Section 240.10B-5.

120.    As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

121.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under

— 17 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## TWELFTH CLAIM FOR RELIEF

### Disgorgement

*(Against Defendant)*

122.    Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

123.    Defendant had a fiduciary duty to be honest and transparent about material financial information and material changes in leadership.

124.    Defendant collected funds for investment and also mismanaged Plaintiff's investment, which caused Plaintiff significant financial injury.

125.    Defendant has retained and benefited from this investment, which was wrongfully collected and managed, thereby unjustly enriching itself at the expense of Plaintiff.

126.    Plaintiff seeks disgorgement of the SPV investment and his personal individual investment.

127.    As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

128.    In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## THIRTEENTH CLAIM FOR RELIEF

### An Accounting

— 18 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

*(Against Defendant)*

129. Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

130. Plaintiff requests an accounting of the last four years of Defendant's financial records, audits, books and records, and other accounting statements.

131. Plaintiff is entitled to an accounting from Defendant to determine the true financial health and solvency of Defendant, including information related to its profits and losses.

132. Defendant's failure to provide a complete and accurate accounting, or any relevant information over the past four years, constitutes a breach of its fiduciary duty to its investors.

133. As a direct and foreseeable result of Defendant's breach and breaches of duty alleged herein, Plaintiff has sustained and will continue to sustain general, special, consequential, and incidental damages, the full nature, extent and amounts of which are presently unknown, but which are in excess of the minimum amount of this Court's jurisdiction, and which will be established according to proof at the time of trial.

134. In doing the acts and engaging in the course of conduct alleged herein, Defendant acted with oppression, fraud, and malice within the meanings assigned to those terms under Delaware law, and Plaintiff is thereby entitled to punitive and exemplary damages in a sum of the minimum jurisdiction of this the court, according to proof at time of trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully pray for relief as follows:

1. For compensatory, special, and incidental damages in an unknown amount which will be proven at trial but no less than an amount which exceeds the minimum jurisdiction of this Court;

2. For punitive and exemplary damages in an unknown amount which will be proven at trial but no less than an amount which exceeds the minimum jurisdiction of this Court;

3. For prejudgment interest as allowed by contract and/or statute;

4. For punitive or exemplary damages against Defendant;

— 19 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

5.  For costs of suit herein incurred and fees; and

6.  For such other and further relief as the Court may deem just and proper.

Plaintiff respectfully demands a trial by jury on all claims so triable.

**DIEGANE DIONE**

Date:  June 15, 2026                                                 By:  _____
                                                                         Diegane Dione

— 20 —

COMPLAINT FOR DAMAGES

Document Ref: CK5PM-EEBCH-BBPLX-AEDHS

# CERTIFICATE *of* SIGNATURE

REF. NUMBER
**CK5PM-EEBCH-BBPLX-AEDHS**

DOCUMENT COMPLETED BY ALL PARTIES ON
**15 JUN 2026 23:08:35**
**UTC**

| SIGNER | TIMESTAMP | SIGNATURE |
|---|---|---|

**DIEGANE DIONE**

EMAIL
**DIEGANE.DIONE@GMAIL.COM**

SENT
**15 JUN 2026 23:08:34**

SIGNED
**15 JUN 2026 23:08:35**



IP ADDRESS
**70.23.136.232**

LOCATION
**BROOKLYN, UNITED STATES**

**Signed with PandaDoc**

